**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAYLA GUTIERREZ, individually and on behalf of all others similarly situated,<br><br>      *Plaintiff*,<br><br>vs.<br><br>KARZ PLUS, LLC, a California Limited Liability Company,<br><br>      *Defendant*. | Case No. **'20 CV2335 MMALL**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227, ET SEQ. (TCPA)**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

1.      Plaintiff, Kayla Gutierrez, brings this action against Defendant, Karz Plus, LLC, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2.      This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* (the "TCPA").

3.      Defendant is an automotive vehicle dealership in California offering used cars for sale. To promote its services, Defendant engages in aggressive unsolicited marketing, harming thousands of consumers in the process.

4.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5.      This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA").

6.      The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District, including Plaintiff.

## PARTIES

7.      Plaintiff is a natural person who, at all times relevant to this action, was a resident of San Diego County, California.

**CLASS ACTION COMPLAINT**

8.      Defendant is a California company whose principal office is located at 1605 National City Blvd, National City, CA 91950. Defendant directs, markets, and provides its business activities throughout the United States, including throughout the state of California.

9.      Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## **THE TCPA**

10.      The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

11.      The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12.      In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

13.      The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone*

**CLASS ACTION COMPLAINT**

*Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

14.    In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

15.    To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates."  *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

16.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

17.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"  *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

18.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. §

**CLASS ACTION COMPLAINT**

64.1200(f)(12);  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at \*49).

19.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).   This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future.  Id.*

20.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

21.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

22.    Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at \*3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the **text message**). (emphasis added).

23.    As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation

5

**CLASS ACTION COMPLAINT**

under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTUAL ALLEGATIONS

24.    Beginning on or about December 6, 2019, Defendant sent the following telemarketing text message to Plaintiff's cellular telephone number ending in 1657 (the "1657 Number"):



**CLASS ACTION COMPLAINT**

25. On or about April 28, 2020, Plaintiff sent Defendant a letter demanding that Defendant immediately adopt an internal Do Not Call list and cease text messaging Plaintiff and class members.

26. Despite Plaintiff's request to opt-out from any further communications, Defendant ignored Plaintiff's demand letter and again sent Plaintiff additional promotional text messages throughout the 2020 calendar year, including the below text messages sent on or about October 22, 23, 26, 28, 2020 and November 17, 2020:



27. Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

28. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff a car.

29. The information contained in the text messages advertise Defendant's various discounts and promotions, which Defendant sends to promote its business.

7

**CLASS ACTION COMPLAINT**

30.    Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.    Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

31.    At no point in time did Plaintiff provide Defendant with her express written consent to be contacted using an ATDS.

32.    Plaintiff is the subscriber and sole user of the 1657 Number and is financially responsible for phone service to the 1657 Number.

33.    The impersonal and generic nature of Defendant's text messages demonstrate that Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

34.    The text messages originated from telephone numbers (619) 378-1783, (760) 281-2221, (619) 649-0744, numbers which upon information and belief are owned and operated by Defendant.

**CLASS ACTION COMPLAINT**

35.     The numbers used by Defendant ((619) 378-1783,  (760) 281-2221, (619) 649-0744,) are known as a "long code," a standard 10-digit phone number that enables Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

36.     Long codes work as follows:  Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

37.     Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case.  The systems utilized by Defendant have the capacity to store telephone numbers using a random or sequential number generator, and to dial such numbers from a list without human intervention.

38.     To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

39.     The Platform has the capacity to store telephone numbers, which capacity was in fact utilized by Defendant.

40.     The Platform has the capacity to generate sequential numbers, which capacity was in fact utilized by Defendant.

41.     The Platform has the capacity to dial numbers in sequential order, which capacity was in fact utilized by Defendant.

42.     The Platform has the capacity to dial numbers from a list of numbers, which capacity was in fact utilized by Defendant.

9

**CLASS ACTION COMPLAINT**

43.    The Platform has the capacity to dial numbers without human intervention, which capacity was in fact utilized by Defendant.

44.    The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

45.    To transmit the messages at issue, the Platform automatically executed the following steps:

a)  The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

b)  The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

c)  Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

d)  Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant.  Each mobile carrier then sent the message to its customer's mobile telephone.

46.    The above execution these instructions occurred seamlessly, with no human intervention, and almost instantaneously.  Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

47.    Further, the Platform "throttles" the transmission of the text messages depending on feedback it receives from the mobile carrier networks.  In other words, the platform controls how quickly messages are transmitted depending on network

**CLASS ACTION COMPLAINT**

1   congestion.  The platform performs this throttling function automatically and does not

2   allow a human to control the function.

3       48.    The following graphic summarizes the above steps and demonstrates that

4   the dialing of the text messages at issue was done by the Platform automatically and

5   without any human intervention:

6
7
8
9
10



11      49.    Defendant's unsolicited text messages caused Plaintiff actual harm,

12  including invasion of her privacy, aggravation, annoyance, intrusion on seclusion,

13  trespass, and conversion.  Defendant's text messages also inconvenienced Plaintiff and

14  caused disruption to her daily life.

15      50.    Defendant's unsolicited text messages caused Plaintiff actual harm.

16  Specifically, Plaintiff estimates that she has wasted fifteen minutes reviewing all of

17  Defendant's unwanted messages and retaining counsel for this case in order to stop

18  Defendant's unwanted messages.

19      51.    Furthermore, Defendant's text messages took up memory on Plaintiff's

20  cellular phone. The cumulative effect of unsolicited text messages like Defendant's

21  poses a real risk of ultimately rendering the phone unusable for text messaging purposes

22  as    a    result    of    the    phone's    memory    being    taken    up.    *See*

23  https://www.consumer.ftc.gov/articles/0350-text-message-spam#text  (finding   that

24  text message solicitations like the ones sent by Defendant present a "triple threat" of

25  identity theft, unwanted cell phone charges, and slower cell phone performance).

26
27
28                                            11

52.    Defendant's text messages also can slow cell phone performance by taking up space on the recipient phone's memory. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam text messages can slow cell phone performance by taking up phone memory space).

## CLASS ALLEGATIONS

### PROPOSED CLASS

53.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

54.    Plaintiff brings this case on behalf of the Class defined as follows:

> **No Consent Class: All persons in the United States who, within four years prior to the filing of this action, (1) were sent a text message by or on behalf of Defendant, (2) using an automatic telephone dialing system, (3) for the purpose of soliciting Defendant's goods and services, (4) without prior express consent of the recipient, or with the same manner of purported consent Defendant claims to have obtained from Plaintiff, if any.**

> **Internal Do Not Call Class: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number *after* making a request to Defendant to not receive future text messages.**

55.    Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

56.    Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the

12

**CLASS ACTION COMPLAINT**

1   United States without their prior express consent.  The members of the Class, therefore,

2   are believed to be so numerous that joinder of all members is impracticable.

3       57.    The exact number and identities of the members of the Class are unknown

4   at this time and can only be ascertained through discovery.  Identification of the Class

5   members is a matter capable of ministerial determination from Defendant's call records.

6   ## COMMON QUESTIONS OF LAW AND FACT

7       58.    There are numerous questions of law and fact common to members of

8   the Class which predominate over any questions affecting only individual members of

9   the Class.  Among the questions of law and fact common to the members of the Class

10  are:

11          a)  Whether Defendant made non-emergency calls to Plaintiff's and Class

12              members' cellular telephones using an ATDS;

13          b)  Whether Defendant can meet its burden of showing that it obtained

14              prior express written consent to make such calls;

15          c)  Whether Defendant's conduct was knowing and willful;

16          d)  Whether Defendant is liable for damages, and the amount of such

17              damages; and

18          e)  Whether Defendant should be enjoined from such conduct in the

19              future.

20      59.    The common questions in this case are capable of having common

21  answers. If Plaintiff's claim that Defendant routinely transmits text messages to

22  telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the

23  Class members will have identical claims capable of being efficiently adjudicated and

24  administered in this case.

25  ## TYPICALITY

26      60.    Plaintiff's claims are typical of the claims of the Class members, as they

27  are all based on the same factual and legal theories.

28

**CLASS ACTION COMPLAINT**

1

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

2    61.    Plaintiff is a representative who will fully and adequately assert and protect

3    the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is

4    an adequate representative and will fairly and adequately protect the interests of the

5    Class.

6    **PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

7    62.    A class action is superior to all other available methods for the fair and

8    efficient adjudication of this lawsuit, because individual litigation of the claims of all

9    members of the Class is economically unfeasible and procedurally impracticable. While

10    the aggregate damages sustained by the Class are in the millions of dollars, the individual

11    damages incurred by each member of the Class resulting from Defendant's wrongful

12    conduct are too small to warrant the expense of individual lawsuits. The likelihood of

13    individual Class members prosecuting their own separate claims is remote, and, even if

14    every member of the Class could afford individual litigation, the court system would be

15    unduly burdened by individual litigation of such cases.

16    63.    The prosecution of separate actions by members of the Class would create

17    a risk of establishing inconsistent rulings and/or incompatible standards of conduct for

18    Defendant.  For example, one court might enjoin Defendant from performing the

19    challenged acts, whereas another may not.  Additionally, individual actions may be

20    dispositive of the interests of the Class, although certain class members are not parties

21    to such actions.

22

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

23

24    64.    Plaintiff re-alleges and incorporates the foregoing allegations as if fully set

25    forth herein.

26    65.    It is a violation of the TCPA to make "any call (other than a call made for

27    emergency purposes or made with the prior express consent of the called party) using

28

14

**CLASS ACTION COMPLAINT**

any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service ….” 47 U.S.C. § 227(b)(1)(A)(iii).

66.     Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

67.     These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

68.     Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

69.     Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

70.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Class are also entitled to an injunction against future calls. *Id.*

## COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

71.     Plaintiff re-alleges and incorporates paragraphs 1 through 63 as if fully set forth herein.

15

**CLASS ACTION COMPLAINT**

72.    At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

73.    Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

74.    Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

75.    As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT III
### Violations of the TCPA, 47 U.S.C. § 227 (c)(2)
### (On Behalf of Plaintiff and the Internal Do Not Call Class)

76.    Plaintiff repeats and realleges the paragraphs 1 through 63 of this Complaint and incorporates them by reference herein.

77.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

78.    Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

16

**CLASS ACTION COMPLAINT**

"(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

47 C.F.R. § 64.1200(d)(3), (6).

79.    Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wires telephone numbers.

"(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.""

47 C.F.R. § 64.1200(e).

80.    Plaintiff and Class members made requests to Defendant not to receive calls from Defendant.

81.    Defendant failed to honor Plaintiff and members' requests.

17

**CLASS ACTION COMPLAINT**

82.     Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

83.     Because Plaintiff and members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

84.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

85.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

86.     Plaintiff and class members also suffered damages in the form of invasion of privacy.

87.     Plaintiff and class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b)  An award of actual and statutory damages for Plaintiff and each member of the Class;

c)  As a result of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq.*, Plaintiff seeks for herself and each member of the Class $500.00 in

**CLASS ACTION COMPLAINT**

statutory damages for each and every violation pursuant to 47 U.S.C. §
277(b)(3)(B);

d) As a result of Defendant's knowing and/or willful violations of 47 U.S.C.
§§ 227, *et seq.*, Plaintiff seeks for herself and each member of the Class
treble damages, as provided by statute, up to $1,500.00 for each and every
violation pursuant to 47 U.S.C. § 277(b)(3)(B) and § 277(b)(3)(C);

e) An order declaring that Defendant's actions, as set out above, violate the
TCPA;

f) A declaratory judgment that Defendant's telephone calling equipment
constitutes an automatic telephone dialing system under the TCPA;

g) An injunction requiring Defendant to cease all unsolicited text messaging
activity, and to otherwise protect the interests of the Class;

h) An injunction prohibiting Defendant from using, or contracting the use
of, an automatic telephone dialing system without obtaining, recipient's
consent to receive calls made with such equipment;

i) An award of reasonable attorneys' fees and costs pursuant to, *inter alia*,
California Code of Civil Procedure § 1021.5; and

j) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: November 30, 2020                          Respectfully submitted,

By: _/s/ Scott Edelsberg_

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
20900 NE 30th Ave, Suite 417

19

**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Aventura, FL 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Class*

20

**CLASS ACTION COMPLAINT**